# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILY PRAKONKHAM, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.: 1:18-cv-0898 - JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF LILY PRAKONKHAM AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Lily Prakonkham asserts she is entitled to a period of disability, disability insurance, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and rejecting limitations identified by a consultative examiner. Because the ALJ failed to apply the proper legal standards, the Court **REMANDS** it for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In April 2014, Plaintiff filed her applications for benefits, in which she alleged disability beginning December 3, 2014, due to lupus; gout; hypertension; and issues with her lungs, heart, and kidneys. (Doc. 10-4 at 3) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*See generally* Doc. 10-4; Doc. 10-3 at 16) Plaintiff requested a hearing and testified before an ALJ on January 10, 2017. (Doc. 10-3 at 16, 32) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on March

13, 2017. (*Id.* at 16-25) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on April 26, 2018. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that a claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Relevant Medical Evidence**

On December 5, 2013, Plaintiff went to the emergency room at Community Medical Centers (CMC), reporting "viral like symptoms for several days including dizziness, weakness, fever, chills, cough, joint pain, body pain, [and] headache." (Doc. 10-9 at 60) Plaintiff also described having chest pains when she coughed and shortness of breath with exertion for approximately one month. (*Id.*) Plaintiff was admitted to the hospital, and the cardiology department was consulted. (*Id.* at 61) On December 9, Dr. Candice Yuvienco examined noted Plaintiff had a "large pericardial effusion, polyarthralgias, anemia, lymphopenia, +ANA, hypocomplementia, [and] elevated inflammatory markers," which were all "consistent with a clinical diagnosis" of systemic lupus erythematous ("SLE"). (*Id.* at 82) Plaintiff was diagnosed with SLE and pericarditis and discharged from the hospital on December 11. (*Id.* at 83)

In May 2014, Plaintiff reported she was having "wrist pain when lifting heavy objects and morning stiffness that lasts [about] 15 minutes." (Doc. 10-10 at 43) Dr. Raman Mattu found "no erythema, warmth, or swelling" in Plaintiff's wrists. (*Id.* at 45) In addition, Dr. Mattu opined Plaintiff's range of motion, sensation, and strength were "intact." (*Id.*) He opined Plaintiff's wrist pain was "likely a manifestation of SLE." (*Id.* at 47) In addition, he noted Plaintiff was scheduled for an appointment with a rheumatologist in August 2014, related to her SLE. (*Id.*)

Dr. Jennifer Hoang examined Plaintiff at Community Medical Centers "for a follow-up for her

SLE" on August 4, 2014. (Doc. 10-11 at 4) Plaintiff again reported "joint pain and stiffness in the morning." (*Id.*) Dr. Hoang determined Plaintiff showed tenderness to palpation in both hands, and found mild deformities in her fingers bilaterally. (*Id.* at 5) Dr. Hoang indicated she would reduce Plaintiff's prescription for Prednisone from 15mg to 10mg daily but increased the prescription of Plaquaneil 200mg from once daily to twice daily. (*Id.*)

Dr. Samuel Rush performed a consultative examination on September 4, 2014. (Doc. 10-11 at 24) Dr. Rush noted that he reviewed medical records that "include[d] hospital reports mentioning lupus and pericardial and plural effusions as well as a possible adrenal mass." (*Id.* at 25) Dr. Rush found Plaintiff's "[h]andgrip strength was slightly weak," at 10 pounds with the right hand and 5 pounds with the left, and her finger squeezing strength was "4/5 on the right and left." (*Id.* at 25, 27) He determined Plaintiff had a normal range of motion in her wrists and hands, and she was "able to extend the hand and … oppose the thumb to each finger." (*Id.* at 26) Dr. Rush observed that Plaintiff could "make a fist without difficulty." (*Id.*) Dr. Rush concluded Plaintiff was able to lift and carry "20 pounds occasionally and 10 pounds frequently;" sit, stand, and walk without restriction; and perform postural activities on an occasional basis. (*Id.* at 27-28) In addition, Dr. Rush opined that Plaintiff's "hands [were] slightly weak," but she could "do simple grasping, pushing and pulling as well as some gross manipulation of both hands." (*Id.* at 28)

Dr. Robert Hughes reviewed records from CMC and Dr. Rush and completed a physical residual functional capacity assessment of Plaintiff's current level of functioning on October 14, 2014. (Doc. 10-4 at 6-10) Dr. Hughes indicated he gave "great weight" to the opinion of Dr. Rush, and opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. (*Id.* at 7-8) According to Dr. Hughes, Plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. (*Id.* at 8) He indicated Plaintiff should "[a]void concentrated exposure" to extreme hold, extreme heat, and hazards such as machinery and heights. (*Id.* at 9) Dr. Hughes noted that Dr. Rush found Plaintiff's hands were "slightly weak but range of motion is good," and concluded Plaintiff did not have any manipulative limitations. (*Id.*)

In November 2014, Plaintiff was evaluated by Hyaesun Ester, NP, who noted that Plaintiff

4

wanted to establish care with CMC because the physician she had been seeing did not take her insurance. (Doc. 10-11 at 6)

Plaintiff had a rheumatology follow-up appointment with Dr. Yuvienco at CMC in March 2015. (Doc. 10-12 at 40) Plaintiff told Dr. Yuvienco that she was "feeling well" and denied having "any joint pain, joint swelling, and… chest pain or shortness of breath." (*Id.*) She was accompanied by her daughter, who translated for Plaintiff and reported she arranged Plaintiff's medication. (*Id.*) Plaintiff stated she tried not to take pain medication, but she was taking medication as prescribed. (*Id.*) Dr. Yuvienco found Plaintiff's peripheral joints had a full range of motion. (*Id.* at 42) Dr. Yuvienco opined Plaintiff's SLE was "under good control." (*Id.* at 43)

Dr. Keith Quint reviewed the record and completed a physical residual functional capacity assessment on June 9, 2015. (Doc. 10-4 at 33-35) He also opined Plaintiff could perform light work with the postural and environmental limitations identified by Dr. Hughes. (*Id.* at 34) Dr. Quint also noted the findings of Dr. Bush that Plaintiff had weakness in her hands but a full range of motion, and concluded Plaintiff did not have any manipulative limitations. (*Id.* at 34-35)

At Plaintiff's next appointment with Dr. Yuvienco in July 2015, Plaintiff again reported "feeling well" and denied any new joint pain or swelling. (Doc. 10-12 at 6) She stated she had "occasional back pain," which occurred with "prolonged standing or sitting, then improve[d] quickly." (*Id.*) Dr. Yuvienco opined that Plaintiff's "SLE[] maintained under good control." (*Id.* at 9)

In January 2016, Dr. Yuvienco noted that Plaintiff "report[ed] feeling joint pains at the hands, without joint swelling." (Doc. 10-13 at 35) She also continued to report "low back pain… that is aggravated during prolonged sitting or standing." (*Id.*) Dr. Yuvienco observed that Plaintiff's joints had a full range of motion, but found a "paralumbar tender spinal muscle spasm." (*Id.* at 38) She advised Plaintiff to take Naproxen and Tylenol as needed for pain and referred Plaintiff to physical therapy for her low back pain. (*Id.*)

Plaintiff had four physical therapy sessions beginning on February 11, 2016 and ending on March 24, 2016. (Doc. 10-13 at 33) Anna Mcdonald, PT, noted upon Plaintiff's discharge from physical therapy that Plaintiff was "able to lift 10 [pounds] floor to chest with correct body mechanics without pain." (*Id.*) Plaintiff also stated she could sit for two hours, walk for two hours, and stand for

thirty minutes. (*Id.*) Ms. Mcdonald discharged Plaintiff with instructions to continue with home exercises. (*Id.* at 34)

In June 2016, Plaintiff told Dr. Yuvienco that she had "occasional tingling pains in [her] feet, mainly when she [stood]." (Doc. 10-13 at 24) Plaintiff denied having any joint swelling, rashes, and shortness of breath. (*Id.*) Dr. Yuvienco opined Plaintiff's joints had full range of motion with no effusion, but she continued to have paralumbar muscle spasm. (*Id.* at 27) Dr. Yuvienco opined Plaintiff's SLE continued to be "under good control, without flare." (*Id.*)

**B.     Administrative Hearing Testimony**

Plaintiff testified that she was unable to work due, in part, to problems with her right wrist and hand. (Doc. 10-3 at 37) The ALJ observed that records indicated Plaintiff "denied any joint pain or swelling" in March and July 2015, and asked Plaintiff whether her "condition significantly improved." (*Id.* at 41) Plaintiff responded it had not, and she was "still hurting." (*Id.*)

Plaintiff stated she had pain in her hands "all the time, in the morning, afternoon, evening, and nighttime." (Doc. 10-3 at 43) She said she had difficulty holding things "too long," and had dropped items, such as a cup and "the big Pepsi bottle." (*Id.* at 43-44) In addition, Plaintiff said she could not squeeze her hand "really good, especially in the morning," but in the afternoon would "maybe… be able to make a fist." (*Id.* at 41) Plaintiff reported she also had pain in her right wrist "oftenly two, three times a day." (*Id.* at 44)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff not engaged in substantial gainful activity since the alleged onset date of December 3, 2013. (Doc. 10-3 at 18) Second, the ALJ found systemic lupus erythematosus was a severe impairment. (*Id.*) At step three, the ALJ determined this impairment did not meet or medically equal a Listing. (*Id.* at 22) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 461.967(b), except she is further limited to frequent balancing and climbing, occasional stooping[,] kneeling[,] crouching, and crawling, and must avoid concentrated exposure to hazards and extreme heat/cold. She is further limited to simple work secondary to her illiteracy and inability to speak English.

(*Id.* at 24) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing [her] past relevant work as an assembler small products II." (*Id.* at 24) Thus,

the ALJ concluded Plaintiff was "not under a disability, as defined in the Social Security Act, from December 3, 2013, through the date of [the] decision." (*Id.*)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues that "[t]he ALJ erred by failing to include work-related limitations in the RFC consistent with Plaintiff's severe impairment of systemic lupus erythematosus," and rejecting manipulative limitations identified by Dr. Rush. (Doc. 17 at 8, emphasis omitted) The Commissioner argues that "substantial evidence supported … the ALJ's evaluation of the evidence, including Dr. Rush's opinion, to find Plaintiff's physical RFC of performing light work with postural and environmental limitations (such as avoiding exposure to hazards and extreme heat or cold), but no manipulative limitations." (Doc. 20 at 9)

**A.     Evaluation of the Medical Evidence**

When evaluating the evidence from medical professionals, three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight, but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. § 404.1527(d)(2).

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id*. An ALJ may reject the opinion of a physician that is contradicted by another opinion with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, because the conclusion of Dr. Rush that Plaintiff had manipulative limitations conflicted with the conclusions of Drs. Hughes and Quint, the ALJ was required to required to identify specific and legitimate reasons supporting his decision to reject the limitations identified by Dr. Rush.

7

The ALJ indicated he gave "significant weight to the exertional and postural opinions of Dr. Rush, as they [were] generally consistent with the medical evidence." (Doc. 10-3 at 23) However, the ALJ indicated he gave "little weight to the manipulative limitations for the reasons discussed with respect to the claimant's non-severe gouty arthritis discussed above, namely that there is little evidence outside this evaluation that the claimant had significant impairment in her ability to use her hands." (*Id.*) With respect to Plaintiff's arthritis, the ALJ observed:

> The claimant has alleged diffuse joint pain, including in her hands, alleging at the hearing that she is unable to even make a fist and has problem with dropping things (Hearing Testimony). Despite these allegations, clinical examination findings routinely showed full motor strength, normal sensation, normal reflexes, and full range of motion throughout (Exhibits 1F, 2F, 6F, and 8F). Although clinical examination findings from the claimant's consultative examination show slight weakness with somewhat reduced grip strength, range of motion throughout all of her joints, including throughout her hands and fingers, were normal and full (Exhibit 4F). Moreover, the claimant was able to extend her hand, oppose her thumb to each finger, and make a fist, without any difficulty (*Id.*). Notes in records outside the claimant's consultative evaluation further fail to show significant complaints relating to the claimant's alleged hand symptoms (Exhibits 1F-8F). The claimant reported during physical therapy in March 2016 that she was doing "a lot better" and able to perform housework, dress herself, and perform activities of daily living without difficulty (Exhibit 8F). Considering the above, I found the claimant's alleged gouty arthritis does not more than minimally affect her ability to perform basic work activities; thus, it is non-severe.

(*Id.* at 19) Plaintiff argues the ALJ failed to identify specific and legitimate reasons supported by the record for rejecting the manipulative limitations, and his "ignorance of Plaintiff's chronic hand complaints constitutes legal error." (Doc. 17 at 9)

1. Consistency with the medical record

The Ninth Circuit explained the opinion of a physician may be rejected where an ALJ finds incongruity between a doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a specific and legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r*, 169 F.3d 595, 602-03 (9th Cir. 1999). However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

When an ALJ believes a physician's opinion is unsupported by the record, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

In rejecting the manipulative limitations identified by Dr. Rush, the ALJ observed: "Although clinical examination findings from the claimant's consultative evaluation show slight weakness with somewhat reduced grip strength, range of motion throughout all of her joints, including throughout her hands and fingers, were normal and full." (Doc. 10-3 at 19) In addition, the ALJ observed that Plaintiff "was able to extend her hand, oppose her thumb to each finger, and make a fist, without any difficulty." (*Id.*) However, the ALJ fails to explain how Dr. Rush's findings regarding Plaintiff's normal range of motion and ability to touch her fingers to thumb contradict the conclusion that she was limited to "simple grasping, pushing and pulling... [and] some gross manipulation of both hands"—which go to her level of strength and endurance with repetition, rather than her range of motion with her wrists and fingers. (*See* Doc. 10-11 at 28) Indeed, Dr. Rush indicated that this limitation was imposed because Plaintiff's "hands [were] slightly weak." (*See id.*) Thus, the ALJ fails to identify inconsistencies with Dr. Rush's report and his conclusions.

The ALJ also indicates the manipulative limitations are not supported by the record, finding "there [was] little evidence outside [the] evaluation that the claimant had significant impairment in her ability to use her hands." (Doc. 10-3 at 23) The ALJ stated: "clinical findings routinely showed full motor strength, normal sensation, normal reflexes, and full range of motion throughout (Exhibits 1F, 2F, 6F, and 8F)." (*Id.* at 19) However, the ALJ fails to identify any specific findings and instead broadly cites to more than 200 pages of medical records. Significantly, the records to which the ALJ refers also include positive findings related to Plaintiff's allegations. For example, Dr. Hoang found Plaintiff had "mild deformities in her fingers bilaterally" and Plaintiff exhibited tenderness to palpation in both hands in August 2014. (Doc. 10-11 at 5) Nevertheless, the ALJ disregarded this probative evidence and concluded the entirety of the record failed to support the manipulative limitations identified by Dr. Rush. This conclusion was not sufficient to carry the burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence." *See Embrey*, 849 F.2d at 421-22.

## 2. Plaintiff's level of activity

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ observed that Plaintiff "reported during physical therapy in March 2016 that she was doing 'a lot better' and able to perform housework, dress herself, and perform activities of daily living without difficulty." (Doc. 10-3 at 20, citing Exh. 8) Notably, Plaintiff was placed in physical therapy for her low back pain, and review of the record indicates the report she was doing "better" was related to her back impairment. (*See* Doc. 10-13 at 33, 35) In addition, the ALJ fails to explain how the limited activities identified—including the ability to dress herself and perform housework—conflict with Dr. Rush's findings regarding her ability to grasp, push, pull, and perform gross manipulation. On this scant record related to Plaintiff's level of activity, the Court is unable to find her level of activity conflicts with the findings of Dr. Rush, and this factor does not support the ALJ's decision to reject the manipulative limitations.

## 3. Lack of substantial evidence

When an ALJ rejects contradicted opinions of physicians, the ALJ must not only identify specific and legitimate reasons for rejecting those opinions, but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p[1], 1996 SSR LEXIS 9 at *8. "It need only be such relevant evidence as a reasonable mind would accept as adequate to

---

[1] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

Plaintiff contends the ALJ's opinion lacks the support of substantial evidence in the record, because "the decision contains no analysis as to why the opinions of non-examining sources should be entitled to greater weight than the examining physician." (Doc. 17 at 11) Notably, the opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews*, 53 F.3d at 1042. Such independent evidence may include laboratory test results or contrary reports from examining physicians. *See Lester*, 81 F.3d at 831. On the other hand, "[t]he nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)

Significantly, the opinions of Drs. Hughes and Quint were based upon the review of the same evidence of Dr. Rush—including the hospital treatment notes from CMC— as well as the findings offered by Dr. Rush after the consultative examination. Thus, the opinions of Drs. Hughes and Qint were not based upon independent clinical findings and cannot constitute substantial evidence. *See, e.g.*, *Ortega v. Comm'r of Soc. Sec.*, 2013 WL 6798930 (E.D. Cal. Dec. 20, 2013) (finding the opinions of non-examining physicians were not substantial evidence supporting the rejection of limitations identified by an examining physician where the non-examining physicians "looked at the same records and objective medical tests"). As a result, the ALJ's conclusion that Plaintiff did not have any manipulative limitations lacks the support of substantial evidence in the record.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S.

12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the manipulative limitations identified by Dr. Rush, and substantial evidence does not support the conclusion. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence and Plaintiff's physical residual functional capacity. *See Moisa*, 367 F.3d at 886.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in his evaluation of the medical record and failed to apply the correct legal standards. Consequently, the Court cannot uphold the ALJ's decision. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Cherie A. Palmer, and against Defendant, Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 21, 2019**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE